312 So.2d 169 (1975)
Marvin E. HALL and Estelle A. Hall
v.
Willie MAJOR.
No. 10155.
Court of Appeal of Louisiana, First Circuit.
March 10, 1975.
Rehearing Denied May 20, 1975.
Writs Refused June 23, 1975.
Johnnie A. Jones, Baton Rouge, for appellants.
Judith Chevalier, Baton Rouge, for appellee.
Before LANDRY, BLANCHE and YELVERTON, JJ.
BLANCHE, Judge.
The parties to this action have been before this court on two separate occasions concerning the same lease which is the subject of the instant suit. In the first appellate appearance of this suit, Major v. Hall, 251 So.2d 444 (La.App. 1st Cir. 1971), Willie Major, defendant herein, was legally restored to the peaceful possession of a service station under a written lease dated March 12, 1969 with Marvin E. Hall and Estelle A. Hall, plaintiffs herein. In said action we found that Major had been evicted from the premises when the Halls locked Major out and leased the same to one Cleon Knighton. The effective date of Major's reinstatement was June 30, 1971. A writ in said case was granted by the Supreme Court and was limited solely to the question of damages. The court, after hearing the matter, remanded the case to the trial court for a determination of the *170 amount of damages suffered by Willie Major as a result of his wrongful eviction. Major v. Hall, 262 La. 243, 263 So.2d 22 (1972). On the second appellate appearance to this court at 286 So.2d 486 (La.App. 1st Cir. 1974) the question of the amount of damages due Willie Major was finally decided, and the Supreme Court refused writs on February 1, 1974.
In the instant suit, filed July 23, 1973, the lessors, Marvin E. and Estelle A. Hall, sought rescission of the same lease that was the subject of the prior litigation on the basis of non-payment of the stipulated $190 per month rental beginning September, 1972. This suit was based upon Major's failure to take possession of the property following this court's order granting him that right and to pay the rent in accordance with the rental agreement.
It was established at the trial that Major never resumed possession of the lease, and following September 30, 1972, the date Cleon Knighton abandoned the premises, the service station was vacant and subject to repeated acts of vandalism. In an effort to eliminate the situation, lessors notified Major in writing on June 22, 1973, that unless he reoccupied the premises and began paying the monthly rental as per their agreement, they would seek rescission of the lease. Major did not respond, and the present suit was instituted. In conjunction therewith, lessors filed a motion to show cause why they should not be granted possession of the premises, which motion was granted on September 7, 1973, after Major admitted he had not, and furthermore would not, reoccupy the premises. The subsequent trial of this matter was for the purpose of determining the lessors' demand for unpaid rent and a determination of Major's reconventional demand for damages occasioned by him as a result of the lessors' purported lease to Knighton. Major claimed damages under the theory that lessors' action in permitting Knighton to remain in the premises unlawfully evicted him, and as a result of that eviction, he lost his gasoline and oil suppliers and also much goodwill.
On April 29, 1974, the trial court gave judgment in favor of the plaintiffs in the sum of $190 monthly from June 30, 1971 until September 7, 1973, the date on which the plaintiffs' motion was granted, thereby placing them in possession of the premises. Said sum was made subject to a credit of $230 monthly from June 30, 1971 to September 30, 1972, representing rental paid to the plaintiffs by Cleon Knighton, who occupied the station during that period of time.
On appeal, appellant Major reurges that the lessors persistently and continuously violated the terms of the lease agreement. He claims lessors violated the lease by allowing Cleon Knighton to remain in possession of the premises from June 30, 1971, the effective date of Major's court-ordered reinstatement to the premises, to such time as Knighton abandoned same on September 30, 1972. He claims the lessors' sufference of Knighton's possession of the premises was "tantamount to an unlawful eviction of Major," especially in view of this court's June 30, 1971 decree reinstating him as lessee. He also asserts it was the duty of the lessors to prepare the premises for Major's repossession pursuant to said decree, which preparation would necessarily have included inter alia, the removal of their purported lessee, Knighton, which he asserts they failed to do. Furthermore, he contends it was the duty of the lessors to inform him when preparation for his return was completed, which duty he avers was never performed.
L.S.A. Civil Code Article 2692 requires a lessor to deliver the leased premises to the lessee, maintain said premises, and insure the lessee's peaceful possession thereof.
In view of the requirements of Article 2692, the appellant contends the lessors were bound to evict the temporary lessee, Knighton, so as to deliver the leased premises to him. Since the lessors did not do so, the appellant argues that he was, in effect, evicted, and therefore is not liable for *171 rent. Additionally, he claims damages as a result of the so-called eviction.
The lessors, however, argue that they stood ready and willing to accept Major as the lessee and that they notified their interim lessee, Knighton, to be ready to vacate the premises when receiving demand from Major. The lessors maintain it was their intention to allow Knighton to remain on the premises only until such time as Major sought reentry. At no time did the lessors refuse to allow Major to assume his position as lessee, nor did they attempt to prevent Major from doing so. When Marvin E. Hall, a co-lessor, was asked at the trial if the lessors were ready and willing to accept Major back under the terms of the lease, he replied in the affirmative.
We note that from June 30, 1971, the date of reinstatement of Major, until September of 1972, lessors accepted the $230 per month rental from Knighton. It was only after Knighton abandoned the premises and discontinued paying the $230 per month rental that Marvin E. Hall approached Major, in November of 1972. At that time, Hall offered Major the keys and the cash register, and also offered the services of Daniel Jones, who was experienced in service station operations, to help run the business. But Major did nothing, and contends his reason for doing so was that since Knighton was allowed to remain at the station from June, 1971 until September, 1972, his poor managerial ability had caused the loss of the supplier of gasoline and other incidentals, and the station had deteriorated to a point where it would no longer meet the City code. At that point, it became obvious Major would not reoccupy the station, and lessors brought suit on June 22, 1973 for rescission of the lease and payment of back rent.
The trial judge, in rendering judgment in favor of lessors for the rent, reasoned that after Major established his right to the peaceful possession of the premises, he had the obligation to pay the rent in accordance with the terms of the lease agreement. But the right to the peaceful possession of the premises always belonged to Willie Major and the question is not whether he had the right to possession, but whether he was ever actually restored to the same after his unlawful eviction. If he was, then the trial judge would have been correct in imposing upon him the duty to pay the rent.
We are unable to find that Willie Major was restored to the peaceful possession of the leased premises. We also find that the failure of Major to enter into the premises after our decree was occasioned by the failure of the lessors to deliver the premises to him. The trial judge resolved the matter by placing the duty on Major, as lessee, to reenter the premises and found that he did nothing to regain actual possession of the premises after our decree. He ignored the fact that the lessors likewise did nothing to restore the premises to Major after said decree despite the fact that it was their obligation to restore him in the premises, as will be hereinafter shown.
With regard to lessors, there was no negotiation with Major to have him reenter the premises until Knighton vacated the same. As long as Knighton was paying the lessors the rent, they obviously had no interest in restoring Major in the premises, especially when they were getting more rent from Knighton than they could have from Major. It was only after Knighton left and quit paying did lessors become interested in restoring the premises to Major.
We believe the lessors were by that time too late in their efforts to restore Major into the premises. Regarding the lessors' obligation under Article 2692 to "deliver the thing leased to the lessee," we note that in Corpus Juris Secundum, it is always the duty of the lessor to place the lessee at least in legal possession of the premises. Concerning the obligation of the lessor to place the lessee in actual possession, we cite the following from 51C C.J.S. Landlord and Tenant § 310:
"There is a conflict of authority as to the duty of a landlord to put his tenant *172 into possession, that is, whether a landlord is required to put his tenant into actual possession or legal possession.
In some jurisdictions, in the absence of a stipulation to the contrary, the lessor is not bound to put his lessee into actual possession, but is bound only to put him into legal possession so that no obstacle in the form of a superior right of possession will be interposed to prevent the lessee from obtaining actual possession. Under this rule there is no duty on the landlord to oust a former tenant or other person wrongfully holding the premises, and, when the landlord gives the tenant the right of possession, he has done all he is required to do. The tenant assumes the burden of enforcing such right of possession as against all persons wrongfully in possession. However, this rule does not apply where the lease contains an express undertaking by the landlord to deliver possession to the tenant or when the property is occupied by the landlord or some one holding under title from him.
In other jurisdictions, in the absence of a stipulation to the contrary, a landlord is required to place his tenant into actual possession of the leased premises, particularly where the lease is to commence in futuro. As otherwise stated, where there is a contract of lease and no stipulations to the contrary, there is an implied covenant on the part of the lessor that, when the time comes for the lessee to take possession under the lease, according to the terms of the contract, the premises shall be open to his entry or, in other words, that there shall then be no impediment to his taking possession."
Louisiana follows the second approach in that a landlord is required to place a tenant in actual possession of the leased premises. It was found in Morgan v. American Indemnity Company, 180 So.2d 429 (La. App. 1st Cir. 1965) that "the primary obligations of a lessor to a tenant are to deliver the thing leased, ..." (page 433). In Siracusa v. Leloup, 28 So.2d 406 (La. App. 1st Cir. 1946) the lessor and lessee entered a lease of property whereby the lessor was to remove two buildings therefrom in order for the defendant to use the tract of land for the purposes for which it was leased. The lessor failed to remove the buildings. The court cited L.S.A. Civil Code Article 2692 and held the lessor was bound by the nature of his contract to deliver the property leased to the lessee. The court further held that "the law placed the obligation on the plaintiff (lessor) to put the defendant (lessee) in possession of the property as lessee,. . ." (page 407).
We have examined the lease agreement in the instant case and find no stipulation which would relieve the lessors from placing their lessee in actual possession of the leased premises. Therefore, in view of the authorities aforementioned, lessors were required to give actual possession of the leased premises to Major. Consequently, lessors were required to insure the removal of Knighton from the premises in order that Major could reoccupy them. The record is clear that lessors did not do so, and therefore, they constructively evicted their lessee.
Again we consider Major's claim for damages as a result of his unlawful eviction. The trial judge found, and we agree, that Major, in fact, admitted that the primary reason he did not return to operate the station was that he did not have financial resources to do so. Considering this fact, the case takes on the following posture: The lessors have evicted Major, and he is glad of it because he is unable to operate the station anyway because of his own financial impecunity. Stated perhaps in more legalistic terms, when the lessors failed to restore Major into the premises and permitted Knighton to remain, they, in effect, evicted Major who had the legal right to the premises and accepted Knighton as their lessee. However, when Major failed to object thereto, notwithstanding *173 the knowledge of his legal right to the premises, he then acquiesced in his lessors' renting of the premises to Knighton and consequently waived any right to damages he may have been occasioned by virtue of his eviction.
For these reasons the trial court's decision granting Marvin E. Hall and Estelle A. Hall the sum of $190 monthly from June 30, 1971 until September 7, 1973, such sum to be subject to a credit of $230 from June 30, 1971 to September 30, 1972, with legal interest thereon from date of judicial demand till paid and all costs of the proceedings, is hereby set aside. Judgment is further rendered herein dismissing plaintiffs Marvin E. and Estelle A. Hall's suit against the defendant, Willie Major. The dismissal of the reconventional demand of Willie Major for damages against Marvin E. Hall and Estelle A. Hall is hereby affirmed. Costs are assessed equally to plaintiffs and defendant.
Affirmed in part and reversed in part and rendered.